```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

SHERRELL DOWDELL-McELHANEY,      *

     Plaintiff,                   *

vs.                               *
                                        CASE NO. 4:20-CV-289 (CDL)
GLOBAL PAYMENTS, INC. and TOTAL  *
SYSTEMS SERVICES, LLC,
                                  *
     Defendants.
                                  *
```

O R D E R

Plaintiff Sherrell Dowdell-McElhaney claims that her former employer, Global Payments, Inc./Total Systems Services, LLC ("TSYS"), failed to promote her and then fired her because of her race, sex, age, disability and in retaliation for complaining about this discrimination. Dowdell-McElhaney, however, has failed to point to sufficient evidence to create a genuine factual dispute as to the essential elements for any of her claims, and therefore, as discussed in the remainder of this order, Defendants' motion for summary judgment (ECF No. 57) is granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence

is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to Dowdell-McElhaney, the record reveals the following facts.  Dowdell-McElhaney, a black woman over the age of 40, began working at TSYS as a credit card fraud analyst in 2016.[1]  In that role, she investigated suspected fraudulent charges by making outbound calls to cardholders based on identified patterns of fraud and asking them scripted questions to determine the charge's legitimacy.  TSYS trained Dowdell-McElhaney to not engage in "call avoidance."  "Call avoidance" occurs when an analyst either "(1) fails to place one or more outbound calls but notes that the calls were made, or (2) places an outbound call and then fails to engage the cardholder when the cardholder answers."  Owen Decl. ¶ 12, ECF No. 57-6.

---

[1] Global Payments acquired TSYS in September 2019.

**I.     Non-Selection to the First Party Fraud Team**

In 2019, TSYS added members to its First Party Fraud Team ("Fraud Team"), which investigates suspected fraud "where the nature of the fraud was less certain." Anderson Decl. ¶ 6, ECF No. 57-4. Because cardholders contacted by the Fraud Team "often became surprised or upset during the call," Fraud Team members "needed strong skills in dealing with upset customers and gathering and responding to new information." *Id.* Dowdell-McElhaney applied to join the Fraud Team. After Dowdell-McElhaney's supervisor met with other managers to consider Fraud Team additions, he did not recommend adding Dowdell-McElhaney. As he explained, he "did not assess McElhaney to be a good fit" for the Fraud Team because "she did better handling calls for which she could be fully prepared, follow a script, and generally deal with cardholders who were not upset." *Id.* ¶ 7. Dowdell-McElhaney's supervisor previously evaluated her positively on an internal reference form, however, and determined that she met expectations compared to others performing her job. TSYS ultimately did not select Dowdell-McElhaney for the Fraud Team.

In April and May 2019, TSYS added several Fraud Team members: Michael Murphy, Gavin Duke, and Samuel Garner. Dowdell-McElhaney testified that a person selected for the Fraud Team, whom she believed to be Murphy, said that his inclusion on the team "came with a pay increase." Pl.'s Dep. 111:20-112:5, ECF No. 58-1. But

3

a TSYS human resources representative testified that these new members received neither "a pay increase or position change as a result of their selection for the team." Yarbrough Decl. ¶ 5, ECF No. 57-3. According to TSYS pay records, Murphy's only 2019 pay increase preceded his Fraud Team selection by several months. *Id.* at 7. Duke, Garner, and Dowdell-McElhaney each received merit pay increases on April 1, 2019. *Id.* at 6, 8, 10. TSYS informed Dowdell-McElhaney of that merit pay increase in February 2019. Pl.'s Dep. Ex. 3, 2019 Compensation Actions Memorandum 1, ECF No. 58-2 at 55.

In September 2019, Dowdell-McElhaney filed her first Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that TSYS did not select her for the Fraud Team because of her age.

**II.  Call Avoidance Investigation, Meeting, and Termination**

In October 2020, a TSYS client complained that it incurred a loss because Dowdell-McElhaney removed a hold on a fraudulent charge. TSYS reimbursed the client for the loss and reviewed documentation relating to how Dowdell-McElhaney handled that account. The manager reviewing that event concluded that Dowdell-McElhaney placed a call related to that charge but never engaged the cardholder. Owen Decl. ¶ 11. Another manager, Loretta Owen, then investigated whether Dowdell-McElhaney engaged in a pattern of call avoidance. After deciding that she had, Owen and other

4

managers met with Dowdell-McElhaney to discuss her work performance on November 11, 2020. *Id.* ¶ 14.

During that meeting, these managers played call recordings which they contended confirmed that Dowdell-McElhaney did not respond to cardholders and inaccurately recorded notes about them. Anderson Decl. ¶ 15; Owen Decl. ¶¶ 14-15. On one such call, Dowdell-McElhaney asserted that she "didn't hear anything." Pl.'s Dep. 148:16-17. She offered several reasons why she may not have contacted that cardholder, including distractions from various sources. *Id.* 148:17-23. And while Dowdell-McElhaney admitted that she made errors and dropped or avoided calls with cardholders, she denied ever doing so intentionally. *Id.* 133:20-23, 155:17-19, 173:11-174:13. During the meeting, however, Dowdell-McElhaney "indicated that she understood" the importance of following applicable policies on cardholder engagement "and would improve going forward." Owen Decl. ¶ 17.

Dowdell-McElhaney acknowledged that the TSYS system for storing call activity "was accurate for the most part." Pl.'s Dep. 49:23-24. On November 18, 2020, Owen reviewed Dowdell-McElhaney's call records in that system since the November 11 meeting; she determined that between November 11 and November 18 Dowdell-McElhaney avoided calls sixteen times, four of which occurred hours after the November 11 meeting. Owen Decl. ¶ 19.

5

TSYS then fired Dowdell-McElhaney on November 18, 2020, purportedly for "this continuing pattern of call avoidance." *Id.*

### III. Legal Actions

Dowdell-McElhaney filed this action on November 20, 2020. On April 27, 2021, Dowdell-McElhaney filed her second EEOC Charge, alleging that Defendants discriminated and retaliated against her based on her age, sex, race, and disability. After the EEOC issued a right to sue letter on the second EEOC Charge, Dowdell-McElhaney amended her complaint in this action to include claims she raised in that Charge. In her operative complaint, Dowdell-McElhaney asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* The Court previously dismissed all claims "except Dowdell-McElhaney's (1) ADEA claim based on her non-selection to the First Party Fraud Team; (2) retaliation claims related to other claims that are not dismissed; (3) Title VII, ADA, and ADEA claims related to allegations in the second Charge which occurred on or after October 29, 2020; and (4) FLSA claim." *Dowdell-McElhaney v. Glob. Payments Inc.*, No. 4:20-CV-289 (CDL), 2022 WL 703600, at *4 (M.D. Ga. Mar. 8, 2022).

DISCUSSION

Defendants move for summary judgment on Dowdell-McElhaney's (1) failure to promote claim related to her not being selected for the Fraud Team and (2) discriminatory and retaliatory termination claims, which are the only claims related to allegations in the second Charge which occurred on or after October 29, 2020.[2]  The Court addresses each in turn.

**I. Failure to Promote Claim**

Dowdell-McElhaney claims that TSYS did not select her for the Fraud Team because of her age.  She was under the misimpression that this selection to the Fraud Team would have resulted in a pay increase and apparently considered it a "promotion."  Whether this "non-selection" was a "failure to promote" or the "denial of a lateral transfer" is not dispositive of the issues raised by the pending motions given that the Court must analyze whether the action was an adverse employment action even if the position sought would not have been a promotion.  It is undisputed that no direct evidence of discrimination exists here, so the Court analyzes this claim under the *McDonnell Douglas* burden-shifting framework. *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019)

---

[2] Defendants also moved for summary judgment on Dowdell-McElhaney's FLSA claim, which was based on an alleged failure to comply with the FLSA's overtime wage requirements.  Dowdell-McElhaney admitted that she did not know of any week where she worked overtime hours but was not properly paid for it, and she did not point to any evidence to create a genuine fact dispute on this issue.  Accordingly, Defendants are entitled to summary judgment on Dowdell-McElhaney's FLSA claim.

(en banc); *see Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013) (affirming that ADEA circumstantial evidence claims follow the *McDonnell Douglas* framework). Under this framework, "the plaintiff bears the initial burden of establishing a prima facie case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated similarly situated employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21 (internal quotation marks omitted).[3] If the plaintiff makes a prima facie case of discrimination, then the burden shifts to the defendant to offer a legitimate non-discriminatory reason for the adverse employment action. *Id.* at 1221. Finally, if the employer offers such a reason, then the burden shifts back to the plaintiff to show that this reason was pretext for unlawful discrimination. *Id.* In the summary judgment context, the question is whether the plaintiff has created a genuine factual dispute as to these elements.

Dowdell-McElhaney's claim fails for two reasons: she has not pointed to sufficient evidence from which a jury could conclude that she suffered an adverse employment action nor has she produced

---

[3] Dowdell-McElhaney did not argue that she can demonstrate a convincing mosaic of circumstantial evidence that merits an inference of intentional discrimination on any of her claims.

evidence from which that jury could conclude that TSYS's decision not to assign her to the Fraud Team was a pretext for unlawful discrimination. Although she argues that "promotion" to the Fraud Team came with an accompanying pay raise, she has pointed to no evidence to support this contention. Dowdell-McElhaney relies upon a vague statement from a fellow employee that *his* inclusion on the team "came with a pay increase." Pl.'s Dep. 111:20-112:5. TSYS's human resources representative testified, however, that Duke, Garner, and Murphy did not receive pay raises because TSYS selected them for the Fraud Team. And TSYS pay records show that the only pay raises any comparator received around the time that TSYS selected Fraud Team members came from merit raises, which Dowdell-McElhaney also received. TSYS notified Dowdell-McElhaney of her merit pay increase months before Fraud Team member selection, indicating that TSYS's decisions regarding merit pay increases occurred before TSYS selected Fraud Team members. So, selection to the Fraud Team did not affect those merit pay raises.[4] The vague hearsay relied upon by Dowdell-McElhaney does not create a genuine factual dispute in light of the other uncontradicted evidence as to the lack of connection between pay increases and the Fraud Team. Furthermore, Dowdell-McElhaney has pointed to no

---

[4] Garner also received a "Transfer Compensation Change" in September 2019 to reflect a new job at a higher grade. Yarbrough Decl. ¶ 8. Dowdell-McElhaney suggests that selection to the Fraud Team increased Garner's promotion potential, but she fails to point to any evidence on this point.

evidence that being designated as a member of the Fraud Team and/or being transferred to that position is sufficiently significant so that not being chosen for it would be a serious and material change in the terms, conditions, or privileges of employment. Accordingly, whether the non-selection is framed as a failure to promote or the denial of a lateral transfer, it does not rise to the level of an adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). Because Dowdell-McElhaney has failed to create a genuine fact dispute on this essential element of her claim, Defendants are entitled to summary judgment.

Even if Dowdell-McElhaney had created a jury question on the adverse employment action element of her claim, she'd still lose because she failed to show that TSYS's legitimate, non-discriminatory reason for its decision not to select her was pretextual. TSYS determined that her skillset did not align with the Fraud Team. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (stating, in an ADEA action, that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions" (citation and internal quotation marks omitted)). And Dowdell-McElhaney has not shown that this reason was pretext for unlawful age discrimination: she argues that TSYS's determination is inconsistent with her supervisor's

10

prior evaluations and merit pay increases, but success in her prior role does not rebut TSYS's proffered reason for declining to assign her different duties. For this alternative reason, Defendants would be entitled to summary judgment even if Dowdell-McElhaney's non-selection to the Fraud Team were deemed to be an adverse employment action.

**II. Discriminatory and Retaliatory Termination Claims**

Dowdell-McElhaney also claims that Defendants fired her because of her age, sex, race, disability and in retaliation for filing her first EEOC Charge. To prevail on her discriminatory termination claims under the *McDonnell Douglas* framework, Dowdell-McElhaney must first produce evidence "that her employer treated similarly situated employees outside her class more favorably." *Lewis*, 918 F.3d at 1220–21 (internal quotation marks omitted). A similarly situated comparator employee generally needs to have engaged in the same basic misconduct, been subjected to the same employment policies, been supervised by the same supervisor, and shared a similar employment and disciplinary history as the plaintiff. *Id.* at 1227-28.

Dowdell-McElhaney was fired because of call avoidance. Although she tries to muddy the water by pointing to comparative financial losses caused by various employees, financial loss was not the reason given for her termination. While failure to comply with the call avoidance procedures could certainly result in a

11

loss to the company, the Court must focus on whether other employees violated similar policies and yet were not terminated, not whether her failure to comply with company policies ultimately resulted in less monetary loss to the company than conduct of other employees. Dowdell-McEhlhaney has pointed to no other similarly situated employee who engaged in call avoidance that was not terminated. She simply points to persons whose conduct she claims resulted in certain losses less than her losses. But these persons are not valid comparators. She pointed to no evidence that they even engaged in call avoidance. Nor has she presented evidence that they shared the same employment and disciplinary history or supervisor as her.

Even if Dowdell-McElhaney cleared the prima facie case hurdle, she has failed to point to evidence to create a genuine factual dispute as to whether Defendants' reason for the termination was a pretext for discrimination. As explained previously, TSYS states that it fired her after reviewing its call system, the accuracy of which is not disputed, and concluding that she engaged in call avoidance. Dowdell-McElhaney has produced no evidence that this conclusion by TSYS was so weak, implausible, inconsistent, or contradictory that the factfinder could find it unworthy of belief. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018). In fact, evidence in the record supports TSYS's conclusion. Although Dowdell-McElhaney partly blames her

12

mistakes on unintentional technical difficulties, she also attributed dropped calls to distractions and "feeling overwhelmed" meeting work obligations. Pl.'s Dep. Ex. 17, Email from Sherrell Dowdell-McElhaney to Loretta Owen et al. (Nov. 11, 2020, 11:46 AM), ECF No. 58-3 at 92; Pl.'s Dep. 148:17-23. Regardless of her excuses, she has failed to meet Defendants' proffered reasons for its termination head on and rebut them with evidence showing that TSYS's "reason was false, and that discrimination was the real reason." *Hornsby-Culpepper*, 906 F.3d at 1312 (citation and internal quotation marks omitted). Accordingly, her discriminatory termination claims fail as a matter of law.

Dowdell-McElhaney's retaliation claim suffers the same fate. She claims that TSYS fired her in retaliation for filing her first EEOC Charge, which complained of age discrimination under the ADEA.[5] To prevail on her ADEA retaliation claim, she "must first establish a prima facie case by showing that: (1) [she] engaged in a statutorily protected activity; (2) [she] suffered an adverse employment action; and (3) [she] established a causal link between the protected activity and the adverse action." *Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009) (providing the Title VII retaliation framework); *Stone v. Geico Gen. Ins. Co.*, 279 F. App'x

---

[5] TSYS also moves for summary judgment on an ADEA retaliation claim based on a brief suspension, but Dowdell-McElhaney clarified that she did not assert an "independent claim" for retaliatory suspension. Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. 11, ECF No. 65.

13

821, 822 (11th Cir. 2008) (per curiam) (analyzing an ADEA retaliation claim under the Title VII framework).[6]

The first deficiency in Dowdell-McElhaney's retaliation claim is that she has been unable to produce sufficient evidence from which a reasonable jury could conclude that a causal link exists between her filing of her first EEOC Charge and her termination. Dowdell-McElhaney has pointed to no direct evidence of causation. Thus, she must rely upon circumstantial evidence, which can consist of temporal proximity between her protected conduct and the adverse employment action. But that temporal proximity must be close. She filed her first Charge in September 2019 and TSYS fired her more than a year later, in November 2020. A year delay is certainly not sufficiently close temporal proximity to support an inference on causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam).

In an attempt to rescue her retaliation claim, Dowdell-McElhaney points to the right to sue letter issued by the EEOC to her on August 21, 2020, which was less than three months before her termination. But she presented no evidence that TSYS was aware of the EEOC's right to sue letter before it terminated her.

---

[6] If the plaintiff establishes a prima facie case of retaliation, the employer may articulate a legitimate, non-retaliatory reason for the employment decision. *Bryant*, 575 F.3d at 1308. If the defendant carries that burden, the plaintiff must "demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Id.*

14

Without this essential piece of evidence, she is unable to create a genuine factual dispute on causation. *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) ("To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct[.]" (citation and internal quotation marks omitted)).

Even if Dowdell-McElhaney could clear the causation hurdle for her retaliation claim, she must overcome the same obstacle she could not avoid with her other discrimination claims. She simply has no evidence that TSYS's stated reasons for firing her were a pretext for unlawful discrimination or retaliation. Defendants are entitled to summary judgment on her retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment (ECF No. 57).

IT IS SO ORDERED, this 11th day of January, 2023.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
